UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

MISSI ESTES,                          )
                                      )
             Plaintiff,               )
                                      )
      v.                              )        2:10-cv-00347-MJK
                                      )
PINELAND FARMS,  INC.,                )
                                      )
             Defendant                )


**MEMORANDUM OF DECISION[1] AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, DEFENDANT'S MOTION FOR NEW TRIAL, AND PLAINTIFF'S MOTION FOR LIQUIDATED DAMAGES AND PREJUDGMENT INTEREST**

On January 25, 2012, the jury returned a verdict for Plaintiff Missi Estes in which it found that Defendant Pineland Farms, Inc., knew of and approved work performed by Plaintiff for Defendant's benefit for which Plaintiff never received compensation and awarded Plaintiff $21,263.34 in damages.  Defendant has filed post-trial motions requesting judgment as a matter of law or, in the alternative, a new trial.  Plaintiff has filed a motion requesting an award of liquidated damages and prejudgment interest.  Defendant's motion for judgment as a matter of law is denied.  Defendant's motion for a new trial is granted as to damages, unless Plaintiff agrees to remittitur reducing her back pay award to $20,696.34.  Should Plaintiff accept the remittitur, Plaintiff's motion is granted.

---

[1]        Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

**DEFENDANT'S MOTIONS**

**A.     The Standards**

     *1.     Motion for judgment as a matter of law*

     To enter judgment in Defendant's favor, as a matter of law, I must conclude that the jury did not have a legally sufficient evidentiary basis to find for Plaintiff on her unpaid wages claim. Fed. R. Civ. P. 50(a)(1).  Such a conclusion cannot be based on an independent assessment of the evidence, and would have to be drawn despite viewing the evidence in the light most favorable to Plaintiff, giving Plaintiff the benefit of all reasonable inferences, and disregarding evidence unfavorable to Plaintiff that the jury was not required to believe.  Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009);  Shannon v. Sasseville, 684 F. Supp. 2d 169, 173 (D. Me. 2010).

     *2.     Motion for new trial*

     The standard that governs Defendant's motion for a new trial is lower.  If the jury's verdict works an injustice, then "the district court has the power and duty to order a new trial." Kearns v. Keystone Shipping Co., 863 F.2d 177, 181 (1st Cir. 1988).  In this task, I may independently weigh the evidence, Jennings, 587 F.3d at 436, but "may set aside a jury's verdict and order a new trial only if the verdict is so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice."  Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 13 (1st Cir. 2004).

     *3.     Proof of the amount and extent of unpaid wages*

     Under both Maine and federal law, Plaintiff's claims for unpaid regular and overtime wages required that she prove, to a probability, the existence and extent of her unpaid wages. This she might do with direct evidence or circumstantial evidence capable of supporting a just and reasonable inference.  See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946) (calling for proof of the "amount and extent of [unpaid] work as a matter of just and reasonable

2

inference"); Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931) (applying general rule that where damages cannot be proved with certainty, "it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate"); Titcomb v. Saco Mobile Home Sales, Inc., 544 A.2d 754, 758 (Me. 1988) (explaining that damages need not be proved to "a mathematical certainty," but with "evidence from which their existence and amount may be determined to a probability"). The standard of proof is a common law standard and the fact that claims for hourly wages might allow for mathematical certainty does not take them outside of the general rule. As the Law Court has observed:

> The triers of facts are allowed to act upon probable and inferential as well as direct and positive proof. They are permitted to make the most intelligible and probable estimate which the nature of the case will permit, given all the facts and circumstances having relevancy to show the probable amount of damages suffered. A monetary award based on a judgmental approximation is proper, provided the evidence establishes facts from which the amount of damages may be determined to a probability.

Merrill Trust Co. v. State, 417 A.2d 435, 441 (1980). Already allowing for approximation, the bar set by the common law rule gains additional flex in cases where the effort to ascertain the amount of damages is frustrated by the defendant's wrongful conduct. This was the case with the standard announced by the United States Supreme Court in Anderson for wage claims under the Fair Labor Standards Act, and it has been observed in other contexts as well. See, e.g., Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 265 (1946) (involving Sherman Act and Clayton Act claims) ("The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. That principle is an ancient one[.]"). Despite this added flexibility, the jury still "may not render a verdict based on speculation or guesswork," id. at 264, and its measure of damages must

3

produce an estimate falling within a probable range, <u>Coastal Fuels, Inc. v. Caribbean Petroleum Corp.</u>, 175 F.3d 18, 33 (1st Cir. 1999).  If the plaintiff's proof falls inside these tolerances, then in the context of unpaid wage claims, the burden of proving damages "shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." <u>Anderson</u>, 328 U.S. at 687-88.  As the First Circuit has explained:  "Plainly, then, although the initial burden is on the employee . . . that burden is a minimal one.  Where the employer has failed to keep adequate employment records, it pays for that failure at trial by bearing the lion's share of the burden of proof."  <u>Sec'y of Labor v. DeSisto</u>, 929 F.2d 789, 792 (1st Cir. 1991).

**B.    Discussion**

Defendant's core argument is that Plaintiff failed to prove the amount and extent of her unpaid wages by a "just and reasonable inference."  (Mot. for J. at 1, ECF No. 75;  Mot. for New Trial at 12, ECF No. 76.)  Plaintiff's effort to demonstrate the amount and extent of her unpaid wages was complicated by the fact that Defendant delegated to her the responsibility to record her own hours, afforded her flex-time during the course of her employment, and paid her overtime in many weeks.  Despite this, there was evidence at trial, particularly in the form of Plaintiff's testimony, from which the jury could have found that Plaintiff inaccurately recorded her hours due to pressure from supervisors in her office to desist from claiming overtime.  This evidence was sufficient to bring this case within the rule of <u>Anderson</u>.  Defendant argued to the jury that Plaintiff bore full responsibility for any failure to accurately report her hours and that she lacked credibility, but the jury did not adopt that perspective and had a sufficient evidentiary basis to conclude that Defendant knew of and approved work performed by Plaintiff for

Defendant's benefit that went unpaid and that this was a pattern that persisted throughout Plaintiff's tenure in employment.[2]

Having found Defendant liable for unpaid wages, the jury was required to fashion an award of damages.  It was plain that neither Plaintiff nor Defendant could prove the number of unpaid regular or overtime hours with precision.  Nevertheless, there was evidence sufficient to support an inference that five hours per week, on average, would serve as a fair approximation. Plaintiff testified to a collection of work activities that could have kept her working an additional five hours per week, on average, whether it be through lunch hours, working on weekends, working from home, or coming in early.  In addition to Plaintiff's testimony, there was other evidence depicting a busy, expanding organization with a number of different administrative tasks and projects for Plaintiff to perform as office receptionist, administrator, or "coordinator," including work she performed from home.  Beyond her administrative duties, there were opportunities for Plaintiff to help out in other parts of the enterprise, including on weekends.  All of this evidence supported Plaintiff's contention that she worked overtime on a consistent basis throughout her employment.  Based on my own attendance at trial, the evidence, viewed in the light most favorable to Plaintiff, was sufficient to permit the jury to conclude, as it did, not only that Defendant knew of and approved work it did not pay for, but also that Plaintiff's five-hour-per-week estimate was within the realm of reasonable probability.  For this reason, Defendant's motion for judgment is denied.

A separate question is whether the jury's calculation of damages is a reasonable estimate of Plaintiff's probable damages.  The verdict form reflects that the jury calculated its award

---

[2]        Plaintiff did not rely exclusively on her own testimony.  She also provided the jury with circumstantial proof, such as her annual evaluation for 2006, which describes her many accomplishments and the extent of her involvement as "an integral part of the entire Pineland Farms operation" (Pl.'s Ex. 46), and her annual evaluation for 2008, in which Defendant acknowledged Plaintiff's willingness to put in extra time.  (Pl.'s Ex. 70.)

based on a straight estimation.  The jury found 260 hours of unpaid wages in each annual period (52 weeks multiplied by 5 hours)[3] and allocated 30 percent of these hours to regular time and 70 percent to overtime.  The jury did not attempt to wade through more than four years of pay records to finely calibrate how the additional hours in any given week should be divided between regular and overtime pay.  Its approach was estimation, pure and simple, and while it seems the finder of fact could have reached a more precise estimate by going through all of the pay records to classify hours as regular time or overtime, it would have required a considerable effort.[4]  Evidently, the jury was not interested in performing that task.  However, during Plaintiff's testimony, Plaintiff related that she performed this task and she testified that her independent analysis called for an award of 369.25 hours at the regular rate of pay and 706.52 hours at the overtime rate (Trial Tr. Vol. I at 200), and her summary of unpaid wages, presented as a demonstrative exhibit during her testimony (Trial Tr. Vol. I at 203;  Pl.'s Ex. 118), indicated $5469.00 in regular wages and $15,486.00 in overtime wages, totaling $20,955.00.  In other words, the jury's estimate ($21,263.34) exceeds Plaintiff's calculation by only $308.34.

Had the jury arrived at an award significantly higher than the Plaintiff's calculation, I would be inclined to grant a new trial, concluding that the award was truly the product of

---

[3]    The jury could have accepted Plaintiff's testimony that she would work in the evenings even during her vacation time.  (Trial Tr. Vol. I at 136:9-13.)

[4]    In both his opening statement and closing argument, plaintiff's counsel suggested that this would be the natural approach to take to arrive at a damages award, if the jury accepted Plaintiff's request for five hours per week. (Trial Tr. Vol. I at 9-10, 15;  Vol. III at 584-85.)  This approach was also how counsel developed Plaintiff's testimony at trial, though counsel never formally moved for the admission of the written calculation developed by Plaintiff.  During its deliberation, the jury twice requested to see Plaintiff's calculation/estimation, but it was never moved into evidence and was unavailable to the jury.  Defendant had prior to trial indicated its objection to the exhibit being admitted as other than a demonstrative aid.  The jury was never presented with any alternative calculation by Defendant, who chose to rely upon its claim that Plaintiff's testimony of working any uncompensated hours lacked credibility rather than attempting to demonstrate that the five-hour per week estimate was too high.  Thus it is no wonder that the jury opted to adopt Plaintiff's estimate for the entire period once it was satisfied that she had worked overtime with Defendant's knowledge and without compensation.  In the end, after a small deduction for six weeks of disability leave, the jury's verdict is less than the amount plaintiff claimed based on her labor-intensive review of the pay records, so any discrepancy that arose from the jury's inability to remember the precise number she presented to them or to undertake the labor-intensive inquiry themselves is harmless.

guesswork and speculation.  However, I cannot say that the jury's estimation is not based on a just and reasonable inference or that it was the product of speculation or guesswork or that Defendant's presentation negated the inference sought by Plaintiff in any but one respect, discussed below.  Nor can I say that the jury's award "exceeds any rational appraisal or estimate of the damages that could be based upon the evidence."  Wortley v. Camplin, 333 F.3d 284, 297 (1st Cir. 2003).  The jury's award is backed up by Plaintiff's calculation.  The fact that the jury's award is $308.34 (one-and-one-half percent) higher than Plaintiff's calculation is explained by the fact that the jury ignored the amended stipulation that, in 2007, Plaintiff "did not perform any work for the benefit of Pineland Farms" while she was out on short term disability leave between November 19, 2007, and December 31, 2007, a six-week period.  (Am. Stipulations, Court Ex. 1, ¶ 13.)  The jury should not have included these six weeks in its award for 2007, making the 2007 jury award erroneous by 30 hours.  Applying the jury's proportional ratio, the jury award includes an overage of nine hours of regular time ($126.00) and 21 hours of overtime ($441.00) and calls for "sua sponte remittitur" of the jury's award to the tune of $567.00.  Vascular Solutions, Inc. v. Marine Polymer Techs., Inc., 590 F.3d 56, 64 (1st Cir. 2009).

Plaintiff presented her five hour per week calculation as a conservative estimate and the simple mathematics for each period on the verdict form confirms that the jury accepted that testimony and based its award upon it.  Defendant's evidentiary presentation and arguments do not compel a contrary outcome or demonstrate an award so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice, if the jury award is reduced so that it is consistent with Plaintiff's stipulation.  Remittitur in this fashion both preserves the jury's reliable methodology and tucks the award under Plaintiff's own estimation, both as to total number of unpaid hours and as to the total monetary award, while also preserving the logical

outcome of Plaintiff's stipulation.  So modified, the award becomes one for 354.3 regular hours and 705.6 overtime hours, where Plaintiff claimed 369.25 regular hours and 706.52 overtime hours.  While I am "disturbing the jury's calculus," <u>Munoz v. Sociedad Espanola de Auxilio y Beneficiencia de P.R.</u>, 671 F.3d 49, 62 (1st Cir. 2012), I have done so only to account for Plaintiff's stipulation.

Defendant also argues that the jury was swayed by sympathy and passion toward Plaintiff due to her testimony about a health condition and due to the revelation that her termination included an eviction from premises owned by Defendant and a loss of health benefits.  (Mot. for New Trial at 19-22.)  The fact that Plaintiff suffered from a health condition was germane to her proof because it tended to explain why she reported working at varying hours of the day and not consistently within the usual 8 to 5 range.  This evidence actually had some tendency to shed a positive light on Defendant because it reflected that Defendant was willing to allow Plaintiff flex time to accommodate her health condition.  The fact that Plaintiff resided in Defendant-owned housing was also germane to Plaintiff's presentation because it supported an inference as to her availability to assist in other areas of the farm operation and as to her commitment to Defendant in recognition of this consideration.  This evidence, too, had a tendency to shed a positive light on Defendant.  Todd Jepson, a former executive director of Pineland Farms who sat through the trial at counsel table, offered testimony related to his desire to offer available rental housing to Plaintiff and her family.  His testimony tended to show a leader genuinely concerned for Plaintiff's welfare and so the housing evidence cut both ways.  As for the eventual loss of housing and health insurance, both were obvious consequences of the termination and the mere

fact that Plaintiff spoke openly of them as motivating her to sue did not unfairly prejudice Defendant and does not necessitate a new trial.[5]

Defendant obviously feels that the verdict unfairly maligns its reputation, but the evidentiary treatment at trial was fair and balanced, particularly in light of the testimony Defendant offered from Craig Denekas, President of the Libra Foundation, which owns Pineland Farms and/or its grounds and facilities.  Mr. Denekas testified at length about the charitable nature of the organization and its desire to practice farming as a form of regional philanthropy. Based on my observation of the trial, it is unlikely that the jury's verdict was the result of prejudice toward Defendant as opposed to a simple assessment that Plaintiff likely did not receive full compensation for work she performed with Defendant's knowledge and approval.

In a final footnote to its motion for judgment, Defendant contends that the estoppel doctrine "should prevent" Plaintiff "from bringing, and prevailing upon, a claim for unpaid wages."  (Mot. for J. at 20 n.7.)  Defendant raised this argument before the case was submitted to the jury.  (Trial Tr. Vol. III at 544.)  The authority now cited in support of the estoppel theory indicates that recovery for unpaid overtime wages is not allowed if the plaintiff, through deceit, induced the defendant to believe no overtime was worked.  See George Lawley & Son Corp. v. South, 140 F.2d 439, 443 (1st Cir. 1944).  This case did not involve any evidence of deceit on the part of either party or any witness based on my assessment of the facts.  Nor did Defendant ever request a special finding from the jury based on deceit.  The estoppel argument is not persuasive.

Defendant's motion for new trial on the basis of unfair prejudice or estoppel grounds is denied.  A new trial on damages will be granted, however, unless Plaintiff accepts a remittitur of the jury award.

---

[5]       As I understood Plaintiff's testimony, the point she was making was that she was content to work extra, unpaid time because she valued her job and benefits.

## PLAINTIFF'S MOTION

Plaintiff requests liquidated damages equal to twice her regular wages award, pursuant to 26 M.R.S. § 626.  (Pl.'s Mot. at 4, ECF No. 77.)  In addition, Plaintiff requests liquidated damages equal to her overtime claim, pursuant to 26 M.R.S. § 670.  (Id. at 3-4.)  Defendant does not object to Plaintiff's requests for liquidated damages.  Plaintiff's motion for liquidated damages is granted, subject to acceptance of the remittitur.  With the remittitur applied, the unpaid regular wages total $5189.83 and the unpaid overtime wages total $15,506.51.  Provided that Plaintiff accepts a remittitur to overcome Defendant's motion for new trial, liquidated damages will be awarded in the amount of $25,886.17.

Plaintiff also requests a statutory award of prejudgment interest under Maine law.  (Id. at 5.)  Unlike federal law, which does not allow an award of prejudgment interest in FLSA wage cases when liquidated damages are awarded, Lupien v. City of Marlborough, 387 F.3d 83, 90 (1st Cir. 2004), Maine law stipulates that employers are liable not only for unpaid wages and "a reasonable rate of interest," but also for liquidated damages.  26 M.R.S. §§ 626, 626-A.  Maine overtime law does not dictate an award of prejudgment interest, but it does not preclude it either. 26 M.R.S. § 670.  Maine law otherwise provides that "prejudgment interest is allowed" in civil actions, with special provisions for small claims actions and contract actions.  14 M.R.S. § 1602-B.[6]

Pursuant to Maine law, the reasonable rate of prejudgment interest available for wage claims is the same as it is for other civil actions:  the one-year United States Treasury bill rate plus three percent.  Avery v. Kennebec Millwork, Inc., 2004 ME 147, ¶¶ 6-8, 861 A.2d 634, 636.

---

[6]  Note that Maine law concerning the payment of regular wages states that liquidated damages are awarded as "an additional amount" on top of prejudgment interest.  26 M.R.S. §§ 626, 626-A.  In other words, a plaintiff does not receive prejudgment interest on liquidated damages.  Even if the statutes could be read to leave open the possibility of awarding prejudgment interest on liquidated damages, in an exercise of discretion I would not make such an award.

As defined in Maine law:  "'one-year United States Treasury bill rate' means the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the last full week of the calendar year immediately prior to the year in which prejudgment interest begins to accrue."  14 M.R.S. § 1602-B(3)(A).

Defendant contends that an award of prejudgment interest should not be made in this case because 14 M.R.S. § 1602-B(5) provides:  "On petition of the nonprevailing party and on a showing of good cause, the trial court may order that interest awarded by this section be fully or partially waived."  Defendant argues that an award of prejudgment interest in addition to liquidated damages "would be unfairly punitive" because liquidated damages will already restore Plaintiff fully for the loss of her wages pending judgment.  (Def.'s Opposition at 3, ECF No. 82.) The Law Court's <u>Avery</u> opinion demonstrates that there is nothing inherently inequitable in a judgment awarding both liquidated damages and prejudgment interest, and Defendant fails to demonstrate good cause for an order fully or partially waiving prejudgment interest with respect to the award of back pay damages.  However, the award of interest will apply only to the back pay award, not to the liquidated damages penalties.  In other words, while the judgment should allow both prejudgment interest and liquidated damages, it should not include interest *on* the liquidated damages penalty, only on the award of damages for unpaid wages.

In her motion, Plaintiff requests that the period of prejudgment interest commence as of May 13, 2010, based on a stipulation between the parties that Plaintiff's counsel presented Defendant with a demand for payment of unpaid wages by letter dated May 13, 2010.  (Pl.'s Mot. at 5-6;  <u>see also</u> Stipulation of Facts ¶ 12, ECF No. 46.)  However, in her reply memorandum, Plaintiff modifies her request and states that prejudgment interest accrues from the filing of the complaint on August 17, 2010.  (Pl.'s Reply at 5, ECF No. 83.)

CONCLUSION

Defendant's Motion for Judgment as a Matter of Law (ECF No. 75) is DENIED.

Defendant's Motion for a New Trial (ECF No. 76) is also DENIED, but that denial is conditioned on Plaintiff's acceptance of the remittitur.

Plaintiff's Motion for Liquidated Damages and Prejudgment Interest (ECF No. 77) is, likewise, conditionally GRANTED.

Should Plaintiff accept the remittitur, then in addition to a modified award of back pay in the amount of $20,696.34, the Court's judgment will include prejudgment interest on the back pay award, measured from August 17, 2010, through the date on which the order of judgment is entered, at the rate of the one-year U.S. Treasury bill rate plus three percent, plus an additional sum of $25,886.17 in liquidated damages.

Plaintiff will indicate her election as to the remittitur by June 22, 2012.

***So Ordered.***

June 1, 2012                              /s/ Margaret J. Kravchuk
                                          U.S. Magistrate Judge